# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

COMAV ASSET MANAGEMENT, LLC,                           :

                                Plaintiff,    :

        - against -                                      :

JORDAN AVIATION PSC, ARAB UNION          :
INTERNATIONAL INSURANCE CO.,
MARSH LTD. and                                             :
JOHN DOE REINSURERS 1-10,

                                            :

                        Defendants.    :

                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Index No.

**SUMMONS**

Date Index No. Purchased:
August 6, 2018

The basis of venue is
CPLR 501 and 503(a)

**TO THE ABOVE-NAMED DEFENDANTS:**

        **YOU ARE HEREBY SUMMONED** to answer the complaint in this action within (20)

twenty days after the service of this summons, exclusive of the day of service, or within thirty

(30) days after service is completed if the summons is not personally delivered to you within the

State of New York.  In case of your failure to appear or answer, judgment will be taken against

you by default for the relief demanded in the complaint.

Dated: New York, New York
         August 6, 2018

                              SMITH, GAMBRELL & RUSSELL, LLP

                              By: _____
                                  John G. McCarthy

                              *Attorneys for Plaintiff*
                              *ComAv Asset Management, LLC*
                              1301 Avenue of the Americas, 21st Floor
                              New York, New York 10019
                              Tel: (212) 907-9700
                              Fax: (212) 907-9800

To:    Jordan Aviation PSC
Operations and Control Centre
Queen Alia International Airport
Amman 11104
Jordan

Arab Union International Insurance Co.
Building No. 264
King Hussein St
Jamal Abdul Nasser Square, Al Abdali
Amman 11118
Jordan

Marsh Ltd.
1 Tower Place West, Tower Place
London EC3R 5BU
England

SGR/18789318.1

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

COMAV ASSET MANAGEMENT, LLC,                    :

                  Plaintiff,        :

    - against –                                 :

JORDAN AVIATION PSC, ARAB UNION                 :
INTERNATIONAL INSURANCE CO.,
MARSH LTD. and                                  :
JOHN DOE REINSURERS 1-10,
                                                :
               Defendants.
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Index No. _____/2018

COMPLAINT

       Plaintiff ComAv Asset Management, LLC, by its attorneys, Smith, Gambrell & Russell, LLP, hereby files its Complaint against defendants Jordan Aviation PSC, Arab Union International Insurance Co., Marsh Ltd., and John Doe Reinsurers 1-10 and alleges as follows:

### Parties

       1.     ComAv Asset Management, LLC, ("ComAv") is a limited liability company organized under the laws of Delaware with its principal place of business in Victorville, California, USA.  On April 1, 2015, ComAv changed its name from its former name of Pacific Aviation Group, LLC.

       2.     Jordan Aviation PSC ("JAV") is a company organized under the laws of the Hashemite Kingdom of Jordan with its Operations and Control Centre in Amman, Jordan.

       3.     Upon information and belief, Arab Union International Insurance Co. ("Arab Union") is an insurance company organized under the laws of the Hashemite Kingdom of Jordan with its headquarters in Amman, Jordan.

4.      Upon information and belief, Marsh Ltd. ("Marsh") is a company authorized and regulated by the Financial Control Authority of the United Kingdom for insurance mediation activities (*i.e.*, insurance brokerage services) with its registered office in London, England. Marsh is a subsidiary of Marsh & McLennan Companies, Inc., which shares are publicly traded on the New York Stock Exchange.

5.      John Doe Reinsurers 1-10 (the "Reinsurers") are reinsurers that agreed to provide reinsurance to Arab Union relating to the policy of insurance placed by JAV and as evidenced by Marsh's Certificate of Reinsurance, Reference No. C16/JORD/00043 (the "Reinsurance Certificate"). Marsh did not provide ComAv with the names of the Reinsurers at the time that they agreed to reinsure Arab Union. ComAv's requests for the identity of the Reinsurers have been rebuffed.

**Background**

6.      ComAv is a fully certified global airframe support provider that specializes in placing consignment inventory assets into programs supporting airlines operating the full range of Airbus and Boeing aircraft globally.

7.      JAV is a privately-owned airline operating primarily in and around Jordan.

8.      Upon information and belief, JAV operates at least ten aircraft manufactured by either Boeing or Airbus.

9.      ComAv and Jordan Aviation entered into an Engine Lease Agreement (the "Lease") dated as of August 24, 2014.

10.      Pursuant to the Lease, ComAv leased to JAV one used CFMI Model CFM 56-3C1 engine bearing engine serial number, or ESN, 857497 (the "Engine").

2

11.     Section 4.4 of the Lease provides that "the Engine will be delivered by [ComAv] to [JAV] in AS IS, WHERE IS condition" and "will have an FAA 8130-3 … tag affixed to it."

12.     An inspection of the Engine took place on August 22, 2014 and a Form FAA 8130-3, Authorized Release Certificate – Airworthiness Approval Tag, was issued and affixed to the Engine.

13.     Thus, pursuant to section 4.5.2 of the Lease, the Engine is "deemed to have been finally accepted for all purposes by JAV under this Lease."

14.     JAV received the Engine in September 2014 and installed it on a Boeing 737-46J aircraft with registration number JY-JAQ (the "JAQ Aircraft") during that month.

15.     Pursuant to Article 2 of the Lease, the term of the Lease (the "Term") commenced on delivery of the Engine and continued until the later of August 31, 2015 or the date on which the Lease is terminated in accordance with the terms of the Lease.

16.     During approximately eighteen of the twenty months following delivery of the Engine, JAV used it on either the JAQ Aircraft or another Boeing 737 aircraft in its fleet.

17.     Pursuant to Section 7.11.1, JAV agreed to "report to [ComAv] … all Flight Hours and Cycles (or part thereof) of Engine operation, any required maintenance actions performed on the Engine" and certain other items as set forth on a form attached to the Lease.

18.     A Cycle is defined in the Lease as "one take-off and landing of the airframe on which the Engine is installed."

19.     During the period from September 2014 until May 2016, JAV reported to ComAv that it had used the Engine on its aircraft for more than 2,000 Cycles.

20.     JAV agreed to pay ComAv rent of $30,000 per month for the Engine.

3

21.     Section 3.1 of the Lease provides that JAV will also pay ComAv $200 per Cycle for each cycle flown within a month in excess of 80 cycles, ComAv refers to this fee as Over Cycle Fee.

22.     JAV failed to make the monthly rent payments for March, April and May 2016.

23.     On or about May 25, 2016, ComAv wrote to JAV about the events of default then in existence and when JAV failed to cure the default ComAv exercised its right to terminate the Lease on or about June 8, 2016.

24.     Once the Lease has been terminated, Section 3.3 of the Lease addresses the default rent due until the Engine is returned to ComAv and the return conditions set forth in Schedule 1 of the Lease have been satisfied.  Thus, the monthly rent has increased by a multiple of two, which JAV is obligated to pay until the Engine meets the return requirements set forth in Schedule 1 of the Lease.

25.     The Lease addresses in detail the responsibilities of ComAv and JAV with respect to repair and maintenance of the Engine.

26.     Section 7.6.1 of the Lease provides:

> During the Term, [JAV] will at its cost and expense (except for normal wear and tear, expiry of any of the Engine's life limited parts "LLP" or mechanical failure unrelated to FOD or misuse, all of which shall be [ComAv's] responsibility) service, repair, overhaul, and maintain the Engine in accordance with [JAV's] approved maintenance program so as to keep same in as good operating condition as when delivered to [JAV].

27.     Elsewhere in Section 7.6.1, FOD is defined as "foreign object damage" and JAV agreed that, at its expense, it "is responsible for repairing damage to the Engine … caused during the Term by … (vi) a foreign object."

4

The FOD Event

28.     On multi-engine aircraft, engine positions are numbered from left to right from the point of view of the pilot looking forward.  As Boeing 737-46J aircraft have two engines, one on each wing, engine position number 2 is on the right wing.

29.     On or about May 30, 2016, the Engine suffered FOD while installed in the number 2 position on the JAQ Aircraft (the "FOD Event").

30.     The FOD Event occurred at takeoff while the JAQ Aircraft was en route from Amman, Jordan to Ebril, Iraq.

31.     When the JAQ Aircraft reached an altitude of 3,500 feet, its crew heard an abnormal noise from the Engine and received a warning that a certain operational limit of the Engine had been exceeded.

32.     The crew took corrective measures and returned the JAQ Aircraft to the airport in Amman, Jordan.

33.     Air traffic control in Amman informed the crew that the number 2 engine was discharging black smoke.

34.     JAV performed a video borescope inspection of the Engine and observed several areas of impact damage through the compressor section of the Engine.

35.     On May 31, 2016, JAV removed the Engine from the JAQ Aircraft for investigation and damage determination.

JAV's Default Continues

36.     On or about June 27, 2016, JAV made a $50,000 partial payment, informed ComAv about the FOD Event, and requested an abatement on the rent obligation for the Engine.

5

37.     On or about June 29, 2016, ComAv responded to JAV that "[i]nitial indications are that [the Engine] became unserviceable due to 'foreign object damage,' a risk borne by [JAV] under the Engine Lease and for which rent is not to be abated."

38.     ComAv asked JAV to return the Engine immediately for inspection.

39.     On August 23, 2016, ComAv again wrote to JAV about the unpaid rent and the failure to return the Engine to ComAv.

40.     On or about October 12, 2016, JAV made a partial payment of $249,000 to ComAv.

The Shipment Event

41.     Finally, during November 2016, JAV arranged to return the Engine to ComAv's facility (the "Facility") at Southern California Logistics Airport, which is also known as Victorville Airport and by VCV, its IATA (or airport) code.

42.     Section 7.14 of the Lease provides:

> [JAV] shall transport the Engine in accordance with the manufacturer's standard and specifications, the Aircraft Maintenance Manual recommended practices and any IATA requirements, such as dangerous goods. If [JAV] fails to transport the Engine as herein provided, [ComAv] shall cause such Engine to be inspected for bearing and/or related damage. [JAV] shall be responsible for any and all costs incurred in relation to any inspection, test, part replacement, repair or other maintenance activity necessary to render the Engine serviceable in accordance with manufacturer's specifications and instructions applicable to the Engine.

43.     Upon information and belief, JAV arranged for the Engine to be transported by air to Los Angeles International Airport ("LAX") and then, via truck, to the Facility.

44.     The Engine was improperly tied down for transport from LAX to the Facility, a trip of approximately 105 miles, thereby negating the stand shock cushions (the "Shipment Event"), which are designed to prevent certain types of damage to the Engine during transit.

45.     Additionally, the inlet cover for the Engine was not secured for transport.

6

46.     When the Engine arrived at the Facility on November 30, 2016, ComAv personnel observed that the inlet cover had been torn open during transport, a condition that allowed free air through the Engine during the transport from LAX to the Facility.

47.     Allowing the free flow of air through an aircraft engine during transport is contrary to the recommended practices of the Aircraft Maintenance Manual, the standards and specification of the Engine's manufacturer and/or the IATA's requirements.

48.     An inspection on November 30, 2016 revealed 15 discrepancies with the Engine due to missing, broken or loose parts or equipment.

Inspection by Pulsar

49.     In December 2016, ComAv retained Pulsar Aviation Services ("Pulsar") to conduct a borescope inspection of the Engine.

50.     In its Borescope Inspection Report, dated December 14, 2016, Pulsar concluded that, as a result of the FOD Event and the Shipment Event, the Engine was unserviceable and required a shop visit for a full engine restoration.

51.     Pulsar determined that the FOD Event caused excessive damage to more than half of the high pressure compressor blades in the first seven stages and 30 percent and 25 percent of the blades in the eighth and ninth stages respectively.

52.     Pulsar concluded that the damage to the high pressure compressor blades was not caused by an internal component failure but rather from a foreign object entering the Engine and manifesting itself in the first stage of the high pressure compressor.

53.     The first stage of high pressure compressor blades is the stage closest to the front of the Engine.

54.     In less technical terms, the damage inflicted on the Engine during the FOD Event was more severe near the front of the Engine and less severe closer to the middle of the Engine.

ComAv's Lease Report

55.     ComAv's technicians, relying in part on the Pulsar report, issued their own report with respect to the Engine, dated January 3, 2017 (the "Lease Report").

56.     The Lease Report notes that, as a result of the FOD Event, the Engine is unserviceable and will require a shop visit for the replacement of the high pressure compressor and all life limited parts.

57.     A life limited part is one that the governing civil aviation authority ("CAA") requires to be replaced prior to being operated for more than a specified number of Cycles or flight hours.

58.     CAA regulations also require that all life limited parts be replaced during certain types of shop visits even if they are not near the end of their life cycle.

59.     The Lease Report also notes that, as a result of the Shipment Event, a full teardown and inspection of the Engine will be required and that the Engine's bearings will probably need to be replaced.

60.     The Lease Report concluded that the combined cost to repair the Engine from the FOD Event and the Shipment Event would likely exceed the $1,000,000 Agreed Value of the Engine set forth in the Lease.

61.     Accordingly, the Lease Report suggests that the Engine should be declared a total loss.

The Miami Inspection

62.     Subsequently, ComAv sent the Engine to the facilities of Miami NDT, Inc. ("Miami NDT") in Miami, Florida to inspect the Engine and to provide a preliminary estimate of the cost to restore the Engine to airworthy condition.

63.     Upon information and belief, representatives of Charles Taylor Adjusting, acting on behalf of JAV, Arab Union, the Reinsurers and/or Marsh, were present at the inspections conducted by Miami NDT.

64.     On December 28, 2017, Miami NDT issued an engine repair quote (the "Quote").

65.     The Quote estimated the cost for a shop visit to restore the Engine to airworthy condition to be $1,061,008, which included approximately $52,000 of charges already incurred by ComAv for the inspections performed by Miami NDT to be able to issue the Quote.

66.     The estimate contained in the Quote is subject to change after completion of a final inspection, for which the Engine must be disassembled, cleaned and dimensionally inspected.

67.     In addition to the amount paid to Miami NDT, ComAv has incurred to date additional expenses totaling $11,782.02 arising from the FOD Event and Shipment Event.

68.     To date, JAV has failed to either repair the Engine or pay ComAv the Agreed Value.

69.     In addition, JAV has failed to pay for the expenses ComAv has incurred as a result of the FOD Event and/or the Shipment Event.

70.     Pursuant to Section 3.2 of the Lease, past due amounts bear interest at the lesser of 1.5 percent per month or the maximum legal rate.

9

Insurance

71.     In Section 9.2 of the Lease, JAV agreed that it

at its own expense, shall maintain in effect with insurers and/or reinsurers of recognized international reputation and responsibility satisfactory to [ComAv]: (A) all-risk (ground, flight, ingestion and taxiing) aircraft hull insurance covering the Engine…

72.     Upon information and belief, JAV obtained the required insurance from Arab Union, which insurance remained in effect through at least May 30, 2016, and ComAv is an Additional Named Insured thereunder.

73.     Pursuant to Section 9.2 of the Lease, ComAv required that Arab Union obtain reinsurance for its risk with respect to the Engine.

74.     Upon information and belief, Arab Union and/or JAV retained Marsh to broker the reinsurance and Marsh provided a certificate of reinsurance.

75.     In 2016, Marsh once again brokered reinsurance for Arab Union for the period of May 19, 2016 to May 18, 2017.

76.     On or about July 14, 2016, Marsh issued the Reinsurance Certificate in which Marsh "certified that Reinsurers have agreed to the following insurance provision as contained under [Arab Union's] Original Policy – Insurers have been advised of the attachment of the following Equipment …" the Engine with an "Agreed Value [of] USD 1,000,000 whilst held spare or whilst fitted to and forming part of an aircraft operated by the Insured."

77.     The term spare is defined in the Reinsurance Certificate to include aircraft engines while in transit.

78.     The Reinsurance Certificate also provides that "[i]n respect of any claim on Equipment that becomes payable on the basis of a Total Loss, settlement … shall be made to, or to the order of the Contract Party(ies)."

10

79.     ComAv is listed as a contract party under its prior name "Pacific Aviation Group (Lessor)".

80.     Additionally, the Reinsurance Certificate lists British Airways PLC as a contract party.  ComAv has since acquired title to the Engine and all of British Airways PLC's rights, title and interest in all claims arising out of the FOD Event and the Shipment Event.

81.     On or about August 25, 2016, ComAv provided Marsh with written notice of a potential insurance claim relating to the FOD Event and demanding that payment not be made to JAV.

<u>Miscellaneous Provisions of the Lease</u>

82.     The parties agreed in Section 17.1 that "[t]his Lease shall be governed and construed in accordance with the laws of the State of New York, U.S.A. applicable to contracts made and to be performed entirely within such state by residents of such state without regard to conflicts of law principles (other than the provisions of Section 5-1401 of the General Obligations Law of the State of New York)."

83.     Section 17.1 of the Lease further provides that JAV "hereby voluntarily submits itself to the jurisdiction of the state and federal courts situated in New York County, New York, U.S.A. for any dispute arising out of or in connection with this [Lease]."

84.     JAV also agreed to appoint CT Corporation System, 111 Eighth Avenue, New York, New York, as its authorized agent for service of process in New York for any lawsuits arising out of the Lease.

85.     Section 17.2 of the Lease provides that JAV "hereby irrevocably waives any objection which it may now or hereafter have to the laying of venue of any suit, action or

proceeding arising out of or relating to this Lease brought in any federal or state court located in New York County, New York, U.S.A."

86.    The insurance portion of the Lease also requires that "[a]ll insurance policies required to be carried and maintained herein shall … include a United States service of suit clause with respect to insurers not domiciled within the United States."

87.    Upon information and belief, JAV complied with the requirement of "a United States service of suit clause" and thus the policies issued by Arab Union and each of the Reinsurers contain consents to the jurisdiction of this Court.

88.    Additionally, the Reinsurance Certificate specifically acknowledges that the Engine "is the subject of the following contract(s):  1. Engine Lease Agreement between Pacific Aviation Group and the Insured."

89.    Accordingly, Arab Union and the Reinsurers consented to the jurisdiction of courts in the United States to hear and determine lawsuits arising out of JAV's use of the Engine.

90.    Section 18.11 of the Lease entitles ComAv to recover from JAV "all costs of suit and attorney's fees … incurred by [ComAv] for the collection of payments due or obligations owed [ComAv] from [JAV] under this Lease."

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Breach of Contract by JAV as to FOD Event)**

91.    ComAv repeats and re-alleges the allegations contained in paragraphs 1 through 90 above as though set forth fully herein.

92.    JAV has breached its obligations under the Lease to either repair the Engine or pay to ComAv the cost of repair the damage caused by the FOD Event or pay the Agreed Value.

93.    JAV has further breached its obligations under the Lease to pay any expenses incurred by ComAv arising from the FOD Event.

12

94.    ComAv has been damaged as a result of JAV's breach relating to the FOD Event in an amount to be determined at trial but believed to exceed $1,000,000.

95.    ComAv is entitled to interest and its attorney's fees.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract by JAV as to Shipment Event)

96.    ComAv repeats and re-alleges the allegations contained in paragraphs 1 through 90 and 92 through 95 above as though set forth fully herein.

97.    JAV has breached its obligation under the Lease to either repair the Engine or pay to ComAv the cost of repair the damage caused by the Shipment Event or pay the Agreed Value.

98.    JAV has further breached its obligations under the Lease to pay any additional amounts incurred by ComAv for expenses arising from the Shipment Event.

99.    ComAv has been damaged as a result of JAV's breach relating to the Shipment Event in an amount to be determined at trial but believed to exceed $500,000.

100.    ComAv is entitled to interest and its attorney's fees.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of Contract by JAV as to Unpaid Rent)

101.    ComAv repeats and re-alleges the allegations contained in paragraphs 1 through 90, 92 through 95 and 97 through 100 above as though set forth fully herein.

102.    JAV has breached its obligation under the Lease to pay monthly rent to ComAv during the Term of the Lease.

103.    Since June 2016, JAV has been obligated to pay double the monthly base rent and has failed to make any of those payments.

104.    As of the date of this complaint, July 24, 2018, ComAv has been damaged as a result of JAV's failure to pay default Rent in an amount equal to $1,560,000.

13

105.    ComAv continues to be entitled to monthly default Rent until the Lease is

terminated pursuant to its terms and will be further damaged if JAV fails to pay the Rent when

due.

106.    ComAv is entitled to interest and its attorney's fees.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Contract by Arab Union)

107.    ComAv repeats and re-alleges the allegations contained in paragraphs 1 through

90, 92 through 95, 97 through 100 and 102 through 106 above as though set forth fully herein.

108.    Arab Union's policy was in effect at the time of the FOD Event and the Shipment

Event.

109.    Arab Union has breached the terms of its policy by failing to pay ComAv on the

loss to the Engine.

110.    ComAv has been damaged as a result of Arab Union's breach in an amount equal

to the $1,000,000 agreed value of the Engine.

111.    ComAv is entitled to interest and its attorney's fees.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (Breach of Contract by Reinsurers)

112.    ComAv repeats and re-alleges the allegations contained in paragraphs 1 through

90, 92 through 95, 97 through 100, 102 through 106 and 108 through 111 above as though set

forth fully herein.

113.    The Reinsurers' policies were in effect at the time of the FOD Event and the

Shipment Event.

114.    Each Reinsurer breached the terms of its policy by failing to pay ComAv its

proportionate share of the Agreed Value of the Engine.

14

115.    ComAv has been damaged by the Reinsurers' breaches in an amount equal to the $1,000,000 agreed value of the Engine.

116.    ComAv is entitled to interest and its attorney's fees.

**AS AND FOR SIXTH CAUSE OF ACTION**
**(Breach of Contract – Marsh)**

117.    ComAv repeats and re-alleges the allegations contained in paragraphs 1 through 90, 92 through 95, 97 through 100, 102 through 106, 108 through 111 and 113 through 116 above as though set forth fully herein.

118.    Marsh agreed to obtain reinsurance for Arab Union's risk with respect to the Engine.

119.    ComAv is a third-party beneficiary of Marsh's agreement to obtain such reinsurance.

120.    Marsh breached its agreement with respect to reinsurance by either (a) failing to identify the Reinsurers' to ComAv; or (b) failing to place the risk for reinsurance; and/or (c) failing to place the reinsurance with reinsurers of recognized international reputation and responsibility.

121.    ComAv has been damaged by Marsh's breach of its duty in the amount of $1,000,000.

122.    Com Av is entitled to interest and its attorney's fees.

WHEREFORE, Plaintiff ComAv demands judgment against Defendants as follows:

(a)    For the First Cause of Action, an amount to be determined which is not less than $1,000,000, with interest thereon from May 30, 2016;

(b)    For the Second Cause of Action, an amount to be determined which is not less than $500,000, with interest thereon from November 30, 2016;

15

(c)     For the Third Cause of Action, is not less than $1,560,000.00, with interest

thereon;

(d)     For the Fourth Cause of Action, $1,000,000 with interest thereon from May 30,

2016;

(e)     For the Fifth Cause of Action, $1,000,000 with interest thereon from May 30,

2016;

(f)     For the Sixth Cause of Action, $1,000,000 with interest thereon from May 30,

2016;

(g)     Attorney's fees;

(h)     Costs; and

(i)     Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       August 6, 2018

                                    SMITH, GAMBRELL & RUSSELL, LLP

                                    By: _____
                                           John G. McCarthy

                                    1301 Avenue of the Americas, 21st Floor
                                    New York, New York 10019
                                    Tel: (212) 907-9700
                                    Fax: (212) 907-9800
                                    jmccarthy@sgrlaw.com

                                                        SGR/18703593.4

16

Case 1:18-cv-08169-RJS   Document 1-1   Filed 09/07/18   Page 20 of 33

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-----------------------------------------------------------X

COMAV ASSET MANAGEMENT, LLC     :

               **Plaintiff,**     :

         -against-     :

JORDAN AVIATION PSC, ARAB UNION    :
INTERNATIONAL INSURANCE CO.,
MARSH, LTD. and     :
JOHN DOE REINSURERS 1-10,

                 :

           **Defendants.**

                 :
-----------------------------------------------------------X

**Index No. 653871/2018**

**ANSWER TO COMPLAINT**

       Defendant Jordan Aviation PSC ("JAV" or "Defendant"), by their attorneys HFW, set forth the following as and for their Answer to the Plaintiff's Complaint:

## PARTIES

1.      Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 1 of the Complaint.

2.      Defendant admits the truth of the allegations set forth in Paragraph 2 of the Complaint.

3.      Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 3 of the Complaint.

4.      Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 4 of the Complaint.

5.      Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 5 of the Complaint.

# BACKGROUND

6.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 6 of the Complaint.

7.     Defendant admits the truth of the allegations set forth in Paragraph 7 of the Complaint.

8.     Defendant admits the truth of the allegations set forth in Paragraph 8 of the Complaint.

9.     Defendant admits that Jordan Aviation and ComAv's predecessor, Pacific Aviation Group, LLC, entered into an Engine Lease Agreement ("Lease"); the remainder of the allegations set forth in Paragraph 9 of the Complaint are denied.

10.     Defendant admits the truth of the allegations set forth in Paragraph 10 of the Complaint.

11.     Defendant admits the truth of the allegations set forth in Paragraph 11 of the Complaint.

12.     Defendant admits the truth of the allegations set forth in Paragraph 12 of the Complaint.

13.     Defendant admits the truth of the allegations set forth in Paragraph 13 of the Complaint.

14.     Defendant admits the truth of the allegations set forth in Paragraph 14 of the Complaint.

15.     Defendant admits the truth of the allegations set forth in Paragraph 15 of the Complaint.

16.     Defendant admits the truth of the allegations set forth in Paragraph 16 of the Complaint.

17.     Defendant admits Section 7.11.1 is contained in the Lease and speaks for itself; JAV denies the truth of the remaining allegations set forth in Paragraph 17 of the Complaint.

18.     Defendant admits the truth of the allegations set forth in Paragraph 18 of the Complaint.

19.     Defendant denies the truth of the allegations set forth in Paragraph 19 of the Complaint.

20.     Defendant denies the truth of the allegations set forth in Paragraph 20 of the Complaint.

21.     Defendant admits the truth of the allegations set forth in Paragraph 21 of the Complaint.

22.     Defendant denies the truth of the allegations set forth in Paragraph 22 of the Complaint.

23.     Defendant denies the truth of the allegations set forth in Paragraph 23 of the Complaint.

24.     Defendant admits Section 3.3 is contained in the Lease and speaks for itself; JAV denies the truth of the remaining allegations set forth in Paragraph 24 of the Complaint.

25.     Defendant admits the truth of the allegations set forth in Paragraph 25 of the Complaint.

26.     Defendant admits Section 7.6.1 is contained in the Lease and speaks for itself; JAV denies the truth of the remaining allegations set forth in Paragraph 26 of the Complaint.

27.     Defendant admits Section 7.6.1 is contained in the Lease and speaks for itself; JAV denies the truth of the remaining allegations set forth in Paragraph 27 of the Complaint.

28.     Defendant admits the truth of the allegations set forth in Paragraph 28 of the Complaint.

29.     Defendant admits that the Engine suffered some type of damage while installed in the number 2 position on the JAQ Aircraft; however, Defendant denies having knowledge or information sufficient to form a belief as to whether the event that occurred on May 30, 2016 was an "FOD Event" as alleged in Paragraph 30 of the Complaint.

30.     Defendant admits that some event occurred with the Engine during takeoff wile the JAQ Aircraft was en route to from Amman, Jordan to Ebril, Iraq as set forth in Paragraph 30; however, Defendant denies having knowledge or information sufficient to form a belief as to whether the event that occurred on May 30, 2016 was an "FOD Event" as alleged in Paragraph 30 of the Complaint.

31.     Defendant admits the truth of the allegations set forth in Paragraph 31 of the Complaint.

32.     Defendant admits the truth of the allegations set forth in Paragraph 32 of the Complaint.

33.     Defendant admits the truth of the allegations set forth in Paragraph 33 of the Complaint.

34.     Defendant admits the truth of the allegations set forth in Paragraph 34 of the Complaint.

35.     Defendant admits the truth of the allegations set forth in Paragraph 35 of the Complaint.

36.     Defendant denies the truth of the allegations set forth in Paragraph 36 of the Complaint.

37.      Defendant denies the truth of the allegations set forth in Paragraph 37 of the Complaint.

38.      Defendant denies the truth of the allegations set forth in Paragraph 38 of the Complaint.

39.      Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 39 of the Complaint.

40.      Defendant denies the truth of the allegations set forth in Paragraph 40 of the Complaint.

41.      Defendant admits the truth of the allegations set forth in Paragraph 41 of the Complaint.

42.      Defendant admits Section 7.14 is contained in the Lease and speaks for itself; JAV denies the truth of the remaining allegations set forth in Paragraph 42 of the Complaint.

43.      Defendant admits the truth of the allegations set forth in Paragraph 43 of the Complaint.

44.      Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 44 of the Complaint.

45.      Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 45 of the Complaint.

46.      Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 46 of the Complaint.

47.      Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 47 of the Complaint.

48.      Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 48 of the Complaint.

49.      Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 49 of the Complaint.

50.      Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 50 of the Complaint.

51.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 51 of the Complaint.

52.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 52 of the Complaint.

53.     Defendant admits the truth of the allegations set forth in Paragraph 53 of the Complaint.

54.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 54 of the Complaint.

55.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 55 of the Complaint.

56.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 56 of the Complaint.

57.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 57 of the Complaint.

58.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 58 of the Complaint.

59.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 59 of the Complaint.

60.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 60 of the Complaint.

61.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 61 of the Complaint.

62.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 49 of the Complaint.

63.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 63 of the Complaint.

64.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 64 of the Complaint.

65.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 65 of the Complaint.

66.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 66 of the Complaint.

67.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 67 of the Complaint.

68.     Defendant denies the truth of the allegations set forth in Paragraph 68 of the Complaint.

69.     Defendant denies the truth of the allegations set forth in Paragraph 69 of the Complaint.

70.     Defendant admits Section 3.2 is contained in the Lease and speaks for itself; JAV denies the truth of the remaining allegations set forth in Paragraph 70 of the Complaint.

71.     Defendant admits Section 9.2 is contained in the Lease and speaks for itself; JAV denies the truth of the remaining allegations set forth in Paragraph 71 of the Complaint.

72.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 72 of the Complaint.

73.     Defendant admits Section 9.2 is contained in the Lease and speaks for itself; JAV denies the truth of the allegations set forth in Paragraph 73 of the Complaint.

74.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 74 of the Complaint.

75.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 75 of the Complaint.

76.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 76 of the Complaint.

77.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 77 of the Complaint.

78.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 78 of the Complaint.

79.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 79 of the Complaint.

80.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 80 of the Complaint.

81.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 81 of the Complaint.

82.     Defendant admits Section 17.1 is contained in the Lease and it speaks for itself; JAV denies the truth of the remaining allegations set forth in Paragraph 82 of the Complaint.

83.     Defendant admits Section 17.1 is contained in the Lease and it speaks for itself; JAV denies the truth of the remaining allegations set forth in Paragraph 83 of the Complaint.

84.     Defendant admits the truth of the allegations set forth in Paragraph 84 of the Complaint.

85.     Defendant admits Section 17.2 is contained in the Lease and it speaks for itself; JAV denies the truth of the remaining allegations set forth in Paragraph 85 of the Complaint.

86.     Defendant admits the insurance portion of the Lease contains various requirements; JAV denies the truth of the remaining allegations set forth in Paragraph 86 of the Complaint.

87.     Defendant denies the truth of the allegations set forth in Paragraph 87 of the Complaint.

88.     Defendant denies having knowledge or information sufficient to form a belief as to  the allegations set forth in Paragraph 88 of the Complaint.

89.     Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 89 of the Complaint.

90.     Defendant admits Section 18.11 is contained in the Lease and speaks for itself; JAV denies the truth of the remaining allegations set forth in Paragraph 90 of the Complaint.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Breach Of Contract by JAV as to FOD Event)

91.     Defendant repeats, reiterates, and re-alleges each and every response to every allegation set forth in Paragraphs 1 through 90 above, as if fully set forth at length herein.

92.     Defendant is not required to respond to the allegations set forth in Paragraph 91 of the Complaint. If response is required, Defendant denies the truth of the allegations set forth in Paragraph 91 of the Complaint.

93.     Defendant denies the truth of the allegations set forth in Paragraph 92 of the Complaint.

94.     Defendant denies the truth of the allegations set forth in Paragraph 93 of the Complaint.

95.     Defendant denies the truth of the allegations set forth in Paragraph 94 of the Complaint.

96.     Defendant denies the truth of the allegations set forth in Paragraph 95 of the Complaint.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Breach Of Contract by JAV as to Shipment Event)

97.     Defendant repeats, reiterates, and re-alleges each and every response to every allegation set forth in Paragraphs 1 through 96 above, as if fully set forth at length herein.

98.    Defendant is not required to respond to the allegations set forth in Paragraph 96 of the Complaint. If response is required, Defendant denies the truth of the allegations set forth in Paragraph 96 of the Complaint.

99.    Defendant denies the truth of the allegations set forth in Paragraph 97 of the Complaint.

100.    Defendant denies the truth of the allegations set forth in Paragraph 98 of the Complaint.

101.    Defendant denies the truth of the allegations set forth in Paragraph 99 of the Complaint.

102.    Defendant denies the truth of the allegations set forth in Paragraph 100 of the Complaint.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Breach Of Contract by JAV as to Unpaid Rent)

103.    Defendant repeats, reiterates, and re-alleges each and every response to every allegation set forth in Paragraphs 1 through 102 above, as if fully set forth at length herein.

104.    Defendant is not required to respond to the allegations set forth in Paragraph 101 of the Complaint. If response is required, Defendant denies the truth of the allegations set forth in Paragraph 101 of the Complaint.

105.    Defendant denies the truth of the allegations set forth in Paragraph 102 of the Complaint.

106.    Defendant denies the truth of the allegations set forth in Paragraph 103 of the Complaint.

107.    Defendant denies the truth of the allegations set forth in Paragraph 104 of the Complaint.

108.    Defendant denies the truth of the allegations set forth in Paragraph 105 of the Complaint.

109.    Defendant denies the truth of the allegations set forth in Paragraph 106 of the Complaint.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach Of Contract by Arab Union)

110.    Defendant repeats, reiterates, and re-alleges each and every response to every allegation set forth in Paragraphs 1 through 109 above, as if fully set forth at length herein.

111.    Defendant is not required to respond to the allegations set forth in Paragraph 107 of the Complaint. If response is required, Defendant denies the truth of the allegations set forth in Paragraph 107 of the Complaint.

112.    Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 108 of the Complaint.

113.    Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 109 of the Complaint.

114.    Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 110 of the Complaint.

115.    Defendant denies the truth of the allegations set forth in Paragraph 111 of the Complaint.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Breach Of Contract by Reinsurers)

116.    Defendant repeats, reiterates, and re-alleges each and every response to every allegation set forth in Paragraphs 1 through 115 above, as if fully set forth at length herein.

117.    Defendant is not required to respond to the allegations set forth in Paragraph 112 of the Complaint. If response is required, Defendant denies the truth of the allegations set forth in Paragraph 112 of the Complaint.

118.    Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 113 of the Complaint.

119.    Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 114 of the Complaint.

120.    Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 115 of the Complaint.

121.    Defendant denies the truth of the allegations set forth in Paragraph 116 of the Complaint.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Breach Of Contract - Marsh)

122.   Defendant repeats, reiterates, and re-alleges each and every response to every allegation set forth in Paragraphs 1 through 121 above, as if fully set forth at length herein.

123.   Defendant is not required to respond to the allegations set forth in Paragraph 117 of the Complaint. If response is required, Defendant denies the truth of the allegations set forth in Paragraph 117 of the Complaint.

124.   Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 118 of the Complaint.

125.   Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 119 of the Complaint.

126.   Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 120 of the Complaint.

127.   Defendant denies having knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 121 of the Complaint.

128.   Defendant denies the truth of the allegations set forth in Paragraph 122 of the Complaint.

129.   Defendant denies the truth of all allegations set forth in sections (a) – (i) of Plaintiff's prayer.

## DEFENDANT'S AFFIRMATIVE DEFENSES

130.   Defendant repeats, reiterates, and re-alleges each and every response to every allegation set forth in Paragraphs 1 through 129 above, as if fully set forth at length herein.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

131.   Plaintiff's claims are barred, in whole or in part, by actions of third persons over whom Defendant had no control.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

132.    Plaintiff's claims are barred, in whole or in part, because there was an intervening or supervening cause over which Defendant had no control.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

133.    Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to adhere to all contractual policy conditions/conditions precedent in the Engine Lease Agreement made the basis of this lawsuit.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

134.    Plaintiff's claims are barred, in whole or in part, because Defendant does not owe the alleged debt and demands proof of the debt and damages Plaintiff claims under the alleged contract

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

135.    Pleading further, Defendant denies Plaintiff is entitled to seek or recover any damages, including but not limited to attorneys' fees and/or interest, under the Engine Lease Agreement, or general equitable principles.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

136.    Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to mitigate its damages.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

137.    Upon information and belief, Defendant's liability, if any, is limited and governed by the provisions set forth in Article 14 of the CPLR.

## AS AND FOR A EIGHT AFFIRMATIVE DEFENSE

138.    Plaintiff has failed to join the necessary party, DHL, and this Court should not proceed in the absence of said party.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

139.    The Complaint is barred by Defendant's complete performance under the terms of the Engine Lease Agreement and its compliance with all of its contractual obligations.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

140.    The Complaint fails to state a claim against the Defendant for which relief can be granted.

## AS AND FOR A ELEVENTH AFFIRMATIVE DEFENSE

141.    Any recovery or relief to which Plaintiff may have been entitled, if any, is barred, in whole or in part, under the doctrine of unclean hands.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

142.    Defendant at all times acted properly, with due care and good faith, and in accordance with their obligations under the Engine Lease Agreement, as concerns the matters at issue in this action.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

143.    Pursuant to Paragraph 7.6.1 of the Engine Lease Agreement, Defendant has no obligation for any debts, obligations, or liabilities for any "off-wing shop visits resulting from normal wear and tear, expiry of Engine LLP or mechanical failure, which is not due to foreign object damage "FOD".

144.    The Defendant is not presently able to determine all of the affirmative defenses to which they are entitled to assert, and may later determine that there are additional affirmative defenses

that are applicable in this case. Defendant reserves the right to supplement this Answer and to

add any additional affirmative defenses to the Plaintiff's Complaint.

WHEREFORE, Defendant Jordan Aviation PCS demands judgment in its favor

dismissing the Complaint in its entirety, for attorney's fees, interest, costs of the suit and such

other relief as the Court may deem just and proper.

**Dated: New York, New York**
**August 28, 2018**

**HFW**

**By:**

Michael J. Wray, Esq. (2050)
Marc Kutner, Esq.
5151 San Felipe, Suite 400
Houston, TX 77056
Tel: (713) 917-0888
Fax: (713) 953-9470

To:    John G. McCarthy
       *Attorney for Plaintiff*,
       COMAV Asset Management, LLC
       Smith, Gambrell & Russell, LLP
       1301 Avenue of the Americas, 21st Floor
       New York, New York 10019